IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CANDY LEE GRAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:20-CV-00575-MDH ) |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff Candy Lee Gray's appeal of Defendant Social Security Administration Commissioner's ("Commissioner") denial of her application for disability insurance benefits under the Social Security Act (the "Act"). Plaintiff exhausted her administrative remedies, and the matter is now ripe for judicial review. After careful review of the record, the Court affirms the decision of the Administrative Law Judge ("ALJ").

## BACKGROUND

On April 10, 2018, plaintiff Candy Lee Gray (Plaintiff) filed for disability insurance benefits under Title II of the Social Security Act (Act) (Tr. 288, 359-60). She alleged disability beginning in November 2016, at age 36, due to "spine" issues, Ehlers-Danlos Syndrome, nonclassic congenital adrenal hyperplasia, chronic fatigue, fibromyalgia, postural orthostatic tachycardia syndrome, "autoimmune disease," methylenetetrahydrofolate, hemochromatosis, and polycystic ovary syndrome (Tr. 409, 425). Plaintiff's claim was denied at the state agency level, and on August 8, 2019, following a hearing, an ALJ found Plaintiff not disabled (Tr. 197-216,

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d)(1), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. By reason of the last sentence of 42 U.S.C. § 405(g), no further action need be taken.

1

245-88, 292-96). On May 29, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-7), making the ALJ's decision the final decision of defendant Commissioner of Social Security, subject to judicial review.

## STANDARD

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and

substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006). Finally, while a deficiency in opinion writing is not enough to merit reversal where it has no practical effect on the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 213 F.3d 984, 988 (8th Cir. 2000).

## DISCUSSION

The specific issues in this case are whether: (1) the ALJ properly evaluated Plaintiff's mental functioning, (2) the ALJ properly evaluated Plaintiff's residual functional capacity, (3) the ALJ properly found that Plaintiff could still perform her past relevant work as well as other work existing in significant numbers in the national economy, and (4) additional evidence attached to Plaintiff's Complaint supports remand for further consideration.

**A. Substantial evidence supports the ALJ's evaluation of Plaintiff's mental functioning.**

The ALJ found that Plaintiff did not suffer from any severe mental health or cognitive impairments. (Tr. 202). The ALJ also concluded that Plaintiff had no limitation in understanding, remembering, or applying information; no limitation in interacting with others; no limitation in concentration, persistence, or maintaining pace; and no limitation in adapting or managing herself. (Tr. 203). Plaintiff argues that the ALJ's characterization of Plaintiff's mental health and cognitive impairments was mistaken.

Contrary to Plaintiff's contention, *see* Pl.'s Br. at 4-9, the ALJ properly evaluated her mental health complaints. At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe," meaning an impairment that significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii). If the claimant has any severe impairment, the ALJ proceeds to the next step of the sequential evaluation. *Id.* In this case, the ALJ found that

3

Plaintiff had the severe impairments of obesity, degenerative disc disease of the lumbar spine, and fibromyalgia (Tr. 202-04). The ALJ thus found in favor of Plaintiff at step two and moved on to the next step in his analysis (Tr. 204-05).

Regarding Plaintiff's mental impairments, the ALJ acknowledged that the record reflected diagnoses of ADHD and obsessive-compulsive disorder (OCD) (Tr. 202). The ALJ found, however, that Plaintiff's mental impairments resulted in no limitations in the four broad areas used to rate the degree of mental functional limitations in the areas of: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting and managing oneself (Tr. 203). *See* 20 C.F.R. § 404.1520a. If a claimant's functional limitations in these four areas are none or mild, an ALJ will generally conclude, as here, that the claimant's mental impairments are not severe. *Id.*

In finding that the record did not support functional limitations from mental impairments, the ALJ found no record of specialized mental health treatment (Tr. 203). A pattern of conservative treatment may erode the reliability of debilitating complaints. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (*citing Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). The ALJ found that, although Plaintiff was prescribed Adderall, it appeared to be prescribed for a physical impairment (Tr. 203, 1427 (noting chronic fatigue syndrome on "chronic adderall therapy")). The ALJ also found that psychiatric status throughout the record were unremarkable (Tr. 203; *see also* Tr. 558, 600, 604, 622, 678, 683, 829, 1344, 1378, 1402, 1424).

Significantly, the ALJ also found that Plaintiff attributed her alleged limitations to physical rather than mental symptoms (Tr. 203, 457-75). In particular, the ALJ found that, in her function report dated May 17, 2018, Plaintiff did not identify mental health-related limitations with personal care, meal preparation, house and yard work, getting around, shopping, social activities, paying

4

attention, following instructions, handling stress, or handlings routine changes (Tr. 203, 457-58, 461-65). In fact, in her May 2018 disability report, Plaintiff stated that "no" she had not seen a doctor or other health care professional "[f]or any mental condition(s)" (Tr. 413 [*emphasis omitted*]).

Plaintiff counters by contending that she did allege limitations with certain mental tasks such as understanding instructions and remembering things. *See* Pl.'s Br. at 7-8. Plaintiff's contention does not undermine the ALJ's findings, however. For one thing, Plaintiff exaggerates her functional reports. For example, instead of alleging that she could "understand only simple instructions," *see* Pl.'s Br. at 7, Plaintiff left a box unchecked in the function report that would indicate any difficulty with following instructions (Tr. 464). She actually reported that she could follow written instructions and simple oral instructions, and that she could follow even complex oral instructions (of more than two steps) if she wrote them down (Tr. 464). Nor did Plaintiff report that she had "a hard time paying bills," as she now contends. *See* Pl.'s Br. at 7. Rather, she reported that she could pay bills, count change, handle a savings account, and use a checkbook/money orders (Tr. 462). She said she used her phone to pay bills automatically and coordinated finances with her fiancé, but she did not indicate this was anything other than sound household budgeting (Tr. 462). Moreover, and as the ALJ found, Plaintiff related even these alleged limitations not to any mental impairment, but to the effects of her various physical impairments (Tr. 457-75). In fact, Plaintiff submitted with her function report a lengthy narrative statement, in which she explained the basis for her alleged limitations as arising from a number of physical impairments (Tr. 459-60, 467-72). And at her administrative hearing, Plaintiff did not testify to any debilitating mental symptoms (Tr. 203, 250-68).

To the extent that Plaintiff alleged some mental effects from pain and physical impairments such as fibromyalgia, the ALJ fully considered Plaintiff's pain and physical impairments in determining her residual functional capacity (RFC) (Tr. 205-08). So long as an ALJ considers all of Plaintiff's severe and non-severe impairments in determining RFC, a failure to find an additional impairment severe is not cause for remand at step two. *See Linze v. Colvin*, No. 4:12CV1113 CDP, 2013 WL 5442766, at *5 (E.D. Mo. Sept. 30, 2013) (recognizing that, since "no further action is required" at step two once an ALJ assesses any severe impairment, a plaintiff's "real argument" concerned the RFC) (*citing Oldham v. Astrue,* 509 F.3d 1254, 1256-57 (10th Cir. 2007)); *Moore v. Colvin*, No. 1:12CV26 TIA, 2013 WL 5432849, at *11 (E.D. Mo. Sept. 27, 2013) (finding any failure to assess additional severe impairments was harmless where the ALJ considered all impairments, severe and not severe, in determining RFC (*citations omitted*)).

Although Plaintiff recites evidence in the record that she believes supports additional mental limitations in the RFC, *see* Pl.'s Br. at 6, her mere disagreement with the ALJ's findings does not warrant remand. *See Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." (citation omitted)). As the Eighth Circuit has stated, if the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, courts will affirm the Commissioner's decision. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

Finally, Plaintiff suggests that, because P. Brent Koprivica, M.D., during a physical evaluation related to Plaintiff's workers' compensation claim, suggested that he would defer to a mental health expert on whether Plaintiff had a potential psychological impairment, the ALJ was

6

required to order a mental health consultative examination (Tr. 1474, 1484, 1486-87). *See* Pl.'s Br. at 8-9. The ALJ had no such duty, however. The Commissioner's regulations allow an ALJ to determine how best to resolve inconsistencies in the record—and explain that an ALJ may order an additional examination but is not required to do so. 20 C.F.R. § 404.1520b. Where the record is sufficient but inconsistent, an ALJ may reach a determination if he can do so based on the evidence at hand. *Id.* As discussed above, the ALJ evaluated the record concerning mental impairments and reasonably determined that he could reach a decision based on the evidence in the record. Plaintiff's disagreement notwithstanding, the ALJ's determination was supported by substantial evidence. Therefore, the ALJ did not err in his evaluation of Plaintiff's mental health complaints.

**B. Substantial evidence supports the ALJ's evaluation of Plaintiff's physical residual functional capacity.**

Plaintiff argues that the ALJ devised an erroneous physical RFC. Specifically, Plaintiff asserts that the ALJ did not assess limitations related to Plaintiff's tachycardia, hand tremors, and degenerative disc disease of the thoracic spine with kyphosis; and that the ALJ failed to explain how obesity limited Plaintiff's ability to function. Plaintiff alleged that she could not work, beginning at age 36, due to "spine" issues, Ehlers-Danlos Syndrome, nonclassic congenital adrenal hyperplasia, chronic fatigue, fibromyalgia, postural orthostatic tachycardia syndrome, "autoimmune disease," methylenetetrahydrofolate, hemochromatosis, and polycystic ovary syndrome (Tr. 409, 425). The ALJ examined the evidence, found Plaintiff's debilitating complaints inconsistent with the record as a whole, and assessed an RFC for a reduced range of sedentary exertional work (Tr. 205-08). *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Although an RFC assessment must be supported by some medical evidence regarding a claimant's ability to work, it need not rely on

7

medical evidence exclusively and is ultimately "an administrative determination reserved to the Commissioner." *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (*citing* 20 C.F.R. § 416.927(e)(2), 416.946; *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).

The ALJ properly considered the opinion evidence along with the record as a whole in evaluating Plaintiff's subjective complaints and formulating the RFC (Tr. 205-08). Because Plaintiff filed her claim after March 27, 2017, the old regulations on medical opinions, 20 C.F.R. § 404.1527, no longer apply. In their place, the agency adopted new regulations, 20 C.F.R. § 404.1520c, for claims filed on or after March 27, 2017. Among the many changes introduced, section 404.1520c eliminated the treating source rule for claims filed after March 27, 2017. *See, e.g. Jusic v. Saul*, No. 4:19-CV-003306-SEP, 2021 WL 1176212, at *10 (E.D. Mo. Mar. 29, 2021) ("For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated." (*citation omitted*)); *Feldhaus v. Saul*, No. 4:19-CV-2249-SPM, 2020 WL 5594062, at *5 n.1 (E.D. Mo. Sept. 18, 2020) (same). Moreover, ALJs no longer assign "weight" to the opinion evidence, but instead evaluate "persuasiveness" using the factors listed in section 404.1520c.

Here, the ALJ considered and found most persuasive the opinion of Lynne Jahnke, M.D. (Tr. 207, 1491-99). In June 2019, in response to a medical interrogatory form sent by the ALJ, Dr. Jahnke reviewed medical records and concluded that, in an 8-hour workday, Plaintiff could

- lift and carry up to 5 pounds frequently and 10 pounds occasionally;
- sit for 2 hours at a time up to 6 hours total;
- stand for 30 minutes at a time up to 2 hours total;
- walk for 30 minutes at a time up to 2 hours total;

8

- occasionally perform postural activities (climbing, balancing, stooping, kneeling, crouching, and crawling) except that she could never climb ladders or scaffolds; and
- tolerate no exposure to unprotected heights and no concentrated exposure to pulmonary irritants, extreme temperatures, and vibrations (Tr. 1498).

The ALJ found Dr. Jahnke's opinion supported by a review of the entire record, which the ALJ found allowed her to provide a thorough longitudinal assessment of Plaintiff's functional capacity (Tr. 207). Supportability is one of the two most important factors for evaluating medical opinions. 20 C.F.R. § 404.1520c(c)(1). The ALJ also found Dr. Jahnke's opinion consistent with the record, including the opinions of Dr. Burton and Dr. Koprivica, as well as the clinical findings in the record (Tr. 207). The more consistent a medical opinion is with the evidence from other medical sources, the more persuasive the opinion will be. 20 C.F.R. § 404.1520c(c)(2). For these reasons, the ALJ crafted an RFC in line with Dr. Jahnke's opinion (Tr. 205, 1498).

Next, the ALJ considered and found somewhat persuasive (though less persuasive overall than Dr. Jahnke's opinion) the opinion of Dr. Koprivica on Plaintiff's ability to lift, carry, and engage in postural activities (Tr. 206, 208). In July 2018, Dr. Koprivica performed a medical evaluation related to a Workers' Compensation claim and stated that Plaintiff was limited to occasionally lifting or carrying 10 pounds; occasionally bending at the waist, pushing, pulling, and twisting; and tolerating no whole-body vibration or jarring, such as from operating heavy equipment or attempting to drive commercially (Tr. 1487). Dr. Koprivica also indicated that Plaintiff would need to be allowed to change positions at will between sitting, standing, and walking (Tr. 1486).

The ALJ found Dr. Koprivica's opinion supported by a detailed written report and by clinical signs and laboratory findings (Tr. 207-08, 1480-82). *See* 20 C.F.R. § 404.1520c(c)(1). The

ALJ found, however, that the opinion was not consistent with the clinical findings two months earlier or with the consultative examiner's findings one month later (Tr. 208, 796-99, 1423). *See* 20 C.F.R. § 404.1520c(c)(2). Indeed, one of Plaintiff's doctors, Jennifer Bequette, M.D., observed in May 2018 that, although Plaintiff had some swelling in her right ankle, she showed normal neck range of motion, normal musculoskeletal range of motion, normal reflexes, and normal coordination (Tr. 1423). And in August 2018, consultative examiner Clarence Dye, M.D., found that, although Plaintiff had positive straight leg raises and tender points, she walked with a normal gait without difficulty, showed no evidence of scoliosis or kyphosis in the spine, was able to walk on her heels and toes, could squat to the floor and recover, had normal grip strength in both hands, showed "10/10" fine and gross manipulative skills in both hands, displayed full (5/5) motor strength in her arms and legs, showed normal ranges of motion in all joints, and had intact sensation and reflexes in her arms and legs (Tr. 796-99).

In addition to the opinion evidence, the ALJ considered a number of other factors, found Plaintiff's debilitating complaints inconsistent with the record as a whole, and determined that the record supported limitations consistent with a reduced range of sedentary work (Tr. 205-08). *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. An ALJ is not required to discuss each possible factor in every case. *See, e.g., Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). So long as the ALJ discredits a claimant's testimony and gives a good reason for doing so, the courts "will normally defer to that judgment." *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (citing *Finch*, 547 F.3d at 935) (*internal quotation marks omitted*).

The ALJ considered the objective medical evidence in the record (Tr. 205-08), but the ALJ also considered inconsistencies between Plaintiff's testimony and the medical record (Tr. 207).

Pursuant to the regulations at 20 C.F.R. § 404.1529, an ALJ may properly consider inconsistencies between a claimant's complaints, personal history, and medical record. *See Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017). For example, the ALJ found, Plaintiff testified that she had a cane as well as a walker and wheelchair, yet the ALJ found no assistive device was prescribed, observed, or used during examinations (Tr. 207, 257, 678, 683, 796, 799, 885, 888, 1480, 1495, 1499).

After evaluating the persuasiveness of the opinion evidence and Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of sedentary work (Tr. 205-08). *See* 20 C.F.R. § 404.1567(a). Specifically, the ALJ found that, in an 8-hour workday, Plaintiff could:

- occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs;
- never climb ladders, ropes, or scaffolds;
- tolerate no concentrated exposure to temperature extremes, vibration, or work hazards;
- never use foot controls; and
- never perform overhead reaching or overhead work

(Tr. 205).

In her brief, Plaintiff contends that the ALJ did not adequately account in the RFC for her tachycardia, hand tremors, and degenerative disc disease. *See* Pl.'s Br. at 9-13. Plaintiff's mere disagreement with the ALJ's decision does not warrant remand. *See Cline*, 771 F.3d at 1102; *Wright*, 789 F.3d at 852. Furthermore, an ALJ is not required to list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (*citation omitted*). In the instant case, the ALJ made clear which of Plaintiff's alleged physical limitations he found supported by the record and, by implication, he did not. *See id.* (ALJ's implicit finding that claimant did not have limitations beyond those listed in the RFC was sufficient); *Depover v. Barnhart*, 349 F.3d

563, 567 (8th Cir. 2003), 349 F.3d at 567 (because the RFC specifically listed claimant's limitations, the court could reasonably believe that functions omitted from the RFC were those the ALJ found not limited).

Next, Plaintiff contends that the ALJ did not sufficiently discuss her obesity under SSR 02-1p. *See* Pl.'s Br. at 13-14. This contention is without merit. For one thing, SSR 02-1p does not apply to this case because it was rescinded and replaced by SSR 19-2p effective May 20, 2019, more than two months before the date of the ALJ's decision (Tr. 197). Furthermore, the ALJ complied with SSR 19-2p by finding obesity a severe impairment at step two of the sequential evaluation, discussing obesity at step three, and then, as discussed above, properly basing his RFC analysis on a consideration of all medically determinable impairments, both severe and not severe (Tr. 202-08). Instead of explaining how her obesity causes any limitations beyond those included in the RFC, Plaintiff seems to suggest that the ALJ committed per se harmful error by not mentioning "obesity" in his RFC discussion. *See* Pl.'s Br. at 14. SSR 19-2p, however, requires only that the ALJ explain his RFC conclusions concerning obesity "[a]s with any other impairment." There is no special articulation requirement that elevates obesity over other impairments. In fact, the SSR cautions that an ALJ is not to "make general assumptions about . . . the functional effects of obesity," but rather encourages a case-by-case analysis based on the information in the case record. SSR 19-2p. ("Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment."). Because the ALJ considered all of Plaintiff's impairments in evaluating RFC, Plaintiff has established no error under SSR 19-2p that warrants remand for further articulation.

Finally, Plaintiff contends that the ALJ erroneously failed to assess her RFC on a "function-by-function" basis under SSR 96-8p. *See* Pl.'s Br. at 14-16. This contention is without merit for

two reasons. First, the Eighth Circuit categorically rejected this very argument in the precedential case of *Nash v. Commissioner of the Social Security Administration*, 907 F.3d 1086, 1090-91 (8th Cir. 2018). As explained in *Nash*, courts review the record "to ensure that an ALJ does not disregard evidence or ignore potential limitations," but do not require an ALJ "to mechanically list and reject every possible limitation." *Id.* (*citations omitted*). Second, the ALJ in this case did assess Plaintiff's RFC on a function-by-function basis. By assessing an RFC for sedentary work "as defined in 20 CFR 404.1567(a)" (Tr. 205), the ALJ made sufficiently clear that, for exertional abilities, Plaintiff could (1) lift no more than 10 pounds at a time; (2) occasionally lift or carry articles like docket files, ledgers, and small tools; and (3) generally walk and stand for up to about 2 hours in an 8-hour workday. 20 C.F.R. § 404.1567(a); Social Security Ruling (SSR) 83-10. *See* 20 C.F.R. § 404.1567(a); SSR 83-10. The ALJ even further specified Plaintiff's RFC on a function-by-function basis by making particularized findings for a number of non-exertional areas, including postural actions (climbing, balancing, stooping, kneeling, crouching, crawling), reaching, and environmental limitations (Tr. 205).

As discussed above, the ALJ's findings were supported by "more than a mere scintilla" of evidence" and the ALJ did not err in devising Plaintiff's physical RFC. *See Biestek*, 139 S. Ct. at 1157.

**C. Substantial evidence supports the ALJ's determination that Plaintiff could perform her past work and other work existing in significant numbers in the national economy.**

Plaintiff argues that the ALJ erred in finding she could return to her past relevant work as a data entry clerk and could perform three other occupations existing in significant numbers in the national economy. *See* Pl.'s Br. at 16-17. At step four of the sequential evaluation, the claimant bears the burden of proving that she cannot return to her past relevant work. *See Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform any of

13

her past relevant work, either as she actually performed it or as it is generally performed in the national economy, the ALJ must find her "not disabled." *See* SSR 82-61; *see also* POMS DI 25005.025, available at http://policy.ssa.gov/poms.nsf/lnx/0425005025. Here, the ALJ found that Plaintiff could return to her work as a data entry clerk as that work is generally performed in the national economy, a finding that Plaintiff does not contest (Tr. 208).

Plaintiff also suggests that the ALJ did not present a complete hypothetical question to the vocational expert. *See* Pl.'s Br. at 16. This contention essentially reiterates Plaintiff's objections to the ALJ's RFC finding. As discussed above, the ALJ's RFC determination was supported by substantial evidence. In turn, the ALJ included all the restrictions in the RFC in a hypothetical question to the vocational expert (Tr. 205, 270-71). A vocational expert's answer to a hypothetical question that includes all the limitations the ALJ found credible provides a proper basis for an ALJ's decision. *Gragg v. Astrue*, 615 F.3d 932, 941 (8th Cir. 2010); *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004). Thus, Plaintiff has established no error in the ALJ's determination, at steps four and five of the sequential evaluation process, that she could perform her past work and other work.

**D. Additional evidence attached to Plaintiff's Brief does not warrant remand.**

Plaintiff argues that the Appeals Council unjustifiably failed to consider all exhibit evidence. Specifically, Plaintiff contends that she submitted new material evidence as part of her request for Appeals Council review, labeled individually as #1 to #34 (Exhibits A to AE). She further argues that the Appeals Council exhibited and considered only a small part of this evidence. (Tr. 2). "Most importantly, it did not exhibit or consider records from Dr. Arvan describing the severe nature of Gray's mental health impairment." (Doc. 11, pp. 17-18).

When it receives additional evidence, the Appeals Council will review an ALJ's decision if that evidence is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Here, in declining to review the ALJ's decision, the Appeals Council reviewed the submitted documents and found that they either did not show a reasonable probability they would change the ALJ's decision or were not related to the time period at issue in this case (before the ALJ's August 8, 2019 decision) (Tr. 2). Furthermore, Plaintiff's contention reflects a misunderstanding of the Court's review when additional evidence is submitted to the Appeals Council. The Court does not evaluate the Appeals Council's denial of review but rather makes its own determination of "whether the record as a whole, including the new evidence, supports the ALJ's determination." *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) (*citing Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)).

When new evidence is submitted to the court, as in this case, the court may order additional evidence to be taken before the Commissioner, but only "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Material evidence is non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that the evidence would have changed the Commissioner's determination. *Whitman v. Colvin*, 762 F.3d 701, 708 (8th Cir. 2014) (citation omitted). Although Plaintiff attached some 642 pages of additional evidence to her complaint, this evidence cannot support remand under sentence six, as Plaintiff has not shown that it is new, it is material, or that she had good cause for failing to submit the evidence to the ALJ.

Of all the evidence attached to her Complaint, Plaintiff contends only that records from Andrea Arvan, M.D., show that she received mental health treatment during the relevant period. *See* Pl.'s Br. at 18. Yet she fails to establish that Dr. Arvan's records undermine the ALJ's decision. *See* Pl.'s Br. at 6, 18.

Dr. Arvan's treatment notes show that, between April 2015 and February 2017, she saw Plaintiff for 10 primary care appointments largely related to complaints of pain and exhaustion. Pl.'s Complaint, Exhibit L Part 1, at 1-8, 46-49, 63-65, 77-79, 97-99, 104-06, 109-11, 116-18; Pl.'s Complaint, Exhibit L Part 2, at 79-81, 100-02, 143-45. At each appointment, Dr. Arvan made no psychological findings on examination. *See* Pl.'s Complaint, Exhibit L Part 1, at 4-5, 48, 64-65, 78, 98, 105, 111, 118; Pl.'s Complaint, Exhibit L Part 2, at 80, 102, 144.

Far from undermining the ALJ's findings in this case, Dr. Arvan's records are consistent with the ALJ's determination that Plaintiff required no more than conservative mental health treatment and attributed her alleged mental difficulties to pain and other symptoms of her physical impairments. For these reasons, Plaintiff has failed to show that remand is required for further consideration of the evidence attached to her Complaint.

## CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision as a whole and no legal error was committed. Accordingly, the decision of the ALJ is hereby affirmed.

**IT IS SO ORDERED.**

Dated: August 31, 2021   */s/ Douglas Harpool*
 **DOUGLAS HARPOOL**
 **United States District Judge**